# In the United States Court of Federal Claims

No. 13-834C

(E-Filed: July 31, 2014)

|  |  |
|---|---|
| DONALD MARTIN, JR., et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>THE UNITED STATES, )<br><br>Defendant. ) | Motion to Dismiss for Failure to State a Claim, RCFC 12(b)(6); Fair Labor Standards Act, 29 U.S.C. §§ 201–19; Violation of "On Time" Payment Requirement; FLSA Workweek Standard; FLSA Exempt Employees |

Heidi Rhodes Burakiewicz, Washington, DC, for plaintiffs.

Sharon A. Snyder, Trial Attorney, with whom were Stuart F. Delery, Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

CAMPBELL-SMITH, Chief Judge

This case arises from the fall 2013 budget impasse and resulting partial government shutdown. Plaintiffs are government workers who were required to work during the shutdown but were not timely paid minimum wages and overtime wages on their regularly scheduled paydays for the work performed. Plaintiffs allege that the late payment of their wages violated the Fair Labor Standards Act (FLSA or the Act), 29 U.S.C. §§ 201–219 (2012), and for such violation they are entitled to statutory liquidated damages. Defendant moves to dismiss the action for failure to state a claim. For the reasons set forth below, defendant's motion to dismiss as to Counts One and Two is **DENIED**, and its motion as to Count Three is **GRANTED**.

I.    Background

When Congress failed to appropriate funds for government work to continue after the end of fiscal year 2013, the federal government experienced a partial shutdown. See Def.'s Mot. to Dismiss for Failure to State a Claim (Def.'s Mot.), March 11, 2014, ECF No. 23, at 3.  The partial shutdown lasted from October 1 through October 16, 2013.  2d Am. Compl., June 2, 2014, ECF No. 29-1, at ¶ 16.  To maintain essential government functions during the shutdown, defendant designated its employees as either "excepted employees" or "non-excepted," and required that excepted employees continue to work and perform their normal duties. Id. ¶ 1.  Excepted employees were not compensated for work performed on or after October 1, 2013, until the partial shutdown ended and their next scheduled payday occurred.[1] Id. ¶ 18.

"For most or all [plaintiffs], the first pay period affected by the partial shutdown commenced Sunday, September 22, 2013 and ended Saturday, October 5, 2013 [(the Pay Period)]." Id. ¶ 21.  Had the shutdown not occurred, each of these individuals presumably would have been paid, in the ordinary course, for all work he or she performed during the Pay Period on the employee's next regularly scheduled payday (Scheduled Payday). See id. (noting that, depending on the employee, the Scheduled Payday was Friday, October 11, 2013; Tuesday, October 15, 2013; or Thursday, October 17, 2013).  The shutdown, however, took place during the course of the Pay Period. When the Scheduled Payday arrived, paychecks reflected payment for work performed only through Monday, September 30, 2013 rather than for the full Pay Period (through October 5, 2013).  Id. ¶¶ 21–22.  Compensation for work performed by excepted employees commencing Tuesday, October 1, 2013 through Saturday, October 5, 2013 (the Five Days) was not included in each employee's regular paycheck and thus, plaintiffs allege they were not paid minimum wage for the week of September 29, 2013 (the Week).  Id. ¶ 1.  The government did not issue wages for the Five Days until approximately two weeks after plaintiffs' Scheduled Paydays, after the government shutdown had ended and Congress had allocated funds to pay the wage debts.  See Pls.' Opp'n to Def.'s Mot. to Dismiss (Pls.' Opp'n), April 11, 2014, ECF No. 26, at 2–3; Def.'s Mot. 4.

There is no dispute that all plaintiffs eventually were paid for all work performed during the Five Days approximately two weeks after their Scheduled Paydays.  Id.

---

[1]     Congress did pass special legislation on the eve of the shutdown to ensure that "troops, . . . civilian Defense Department workers[,] and employees of contractors whom the Secretary of Defense determined to be 'providing support to members of the Armed Forces'" would be paid on time.  Pls.' Opp'n to Def.'s Mot. Dismiss (Pls.' Opp'n), April 11, 2014, ECF No. 26, at 29 (quoting Pay Our Military Act, Pub. L. No. 113-39, 92, 127 Stat. 532 (2013)).

However, plaintiffs assert that the government's failure to make payment in a timely manner—that is, on the regularly Scheduled Payday—was a violation of the FLSA. See 2d Am. Compl. ¶ 1.

Plaintiffs filed their initial Complaint with this court on October 24, 2013, ECF No. 1, a First Amended Complaint (Am. Compl.) on January 27, 2014, ECF No. 13, and a Second Amended Complaint (2d Am. Compl.) was deemed filed on June 2, 2014, ECF No. 29-1, see Order, June 2, 2014, ECF No. 37 (granting plaintiffs' motion for leave to file their Second Amended Complaint). The five plaintiffs originally named in this lawsuit were excepted employees working for the Bureau of Prisons, within the Department of Justice, at various federal prisons throughout the United States over the course of the government shutdown. Id. ¶¶ 6–10; see Def.'s Mot. 3. Plaintiffs attached to their First Amended Complaint an Appendix listing 1023 opt-in plaintiffs who were employed by various governmental agencies during the relevant pay period. See Am Compl. ¶ 12. In their Second Amended Complaint, plaintiffs added 911 opt-in plaintiffs.[2] 2d Am. Compl. 1. Each proposed opt-in plaintiff allegedly was classified as excepted during the government shutdown and performed work during that time for which he or she was not timely compensated.[3] 2d Am. Compl. ¶¶ 12–13.

In Count One, plaintiffs complain that the government's failure to timely pay excepted employees for the Five Days resulted in a minimum wage violation under the FLSA. 2d Am. Compl. ¶ 1. They reason that the late payment effected an underpayment and resulted in many potential plaintiffs receiving less than minimum wage for work performed during the Week in violation of the FLSA. Id. ¶¶ 55–58. The applicable minimum wage is $7.25 per hour or $290 for a forty hour workweek. Id. ¶ 1. Plaintiffs seek liquidated damages at a rate of $7.25 per hour multiplied by the number of hours

---

[2]    In their Second Amended Complaint, plaintiffs also withdrew Count Four, in which they had alleged violations of the Back Pay Act, 29 U.S.C. § 5596. See 2d Am. Compl.; Order, June 2, 2014, ECF No. 37 (granting plaintiffs' Motion for Leave to File Second Amended Complaint). Because plaintiffs no longer wish to pursue their Back Pay Act claims, the court does not address defendant's arguments regarding dismissal of those claims.

[3]    Plaintiffs also have filed a motion to conditionally certify this case as a collective action. Pls.' Mot. to Certify, Jan. 28, 2014, ECF No. 14. Plaintiffs represent that there were approximately 1.3 million excepted employees subjected to late payment of wages due to the October 2013 shutdown. 2d Am. Compl. ¶ 19. The collective action proposed by plaintiffs would include "all government employees who (a) were classified by [d]efendant as '[excepted] [e]mployees,' (b) performed work for [d]efendant at any time during the Five Days, and (c) were not paid for such work on their Scheduled Payday." Id. ¶ 4. Briefing on the motion for conditional certification is still under way.

worked during the Five Days, or alternatively, in an amount equal to the difference between $290 and the amount paid on the Scheduled Payday for work performed during the Week.  Id. ¶ 1.

In Count Two, plaintiffs claim that, in violation of the FLSA, potential plaintiffs—who were classified as FLSA non-exempt and therefore entitled to overtime under the FLSA—were not paid overtime compensation on time for work performed during the Five Days.  Id. ¶¶ 59–63.

In Count Three, plaintiffs assert that potential plaintiffs who were classified as FLSA exempt are nonetheless entitled to compensation for overtime hours worked during the Five Days.[4]  See id. ¶¶ 64–69.  Plaintiffs contend that because the government chose not to compensate excepted employees on time and failed to pay them on a "salary basis" for the Week, even the exempt employees are entitled to FLSA damages at applicable rates for any overtime work performed during the Week.  See Pls.' Opp'n 33–36.

Pending now before the court are Defendant's Motion to Dismiss for Failure to State a Claim[5] (Def.'s Mot.); Plaintiffs' Opposition to Defendant's Motion to Dismiss (Pls.' Opp'n); and Defendant's Reply In Support of Its Motion to Dismiss (Def.'s Reply), May 2, 2014, ECF No. 27.  The court held oral argument on May 9, 2014.  Defendant's motion is ripe for review.

II.   Legal Standards

A motion to dismiss for "failure to state a claim upon which relief can be granted," Rules of the United States Court of Federal Claims (RCFC) 12(b)(6), should be granted "when the facts asserted by the claimant do not entitle him to a legal remedy," Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002); see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (explaining that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (citing Bell Atl. v. Twombly, 550 U.S. 544, 556

---

[4]     Of the five originally named plaintiffs, Messrs. Martin, Manbeck, Roberts, and Sumner were classified as FLSA non-exempt, but Mr. Rojas was classified as FLSA exempt.  2d Am. Compl. ¶¶ 6–10.

[5]     Defendant also filed a Motion to Transfer, ECF No. 23, which it later withdrew in light of the Court of Appeals for the Federal Circuit's decision in Abbey et al. v. United States, 745 F.3d 1363 (Fed. Cir. 2014).  See Def.'s Notice of Suppl. Auth., ECF No. 24. In Abbey, the Court of Appeals rejected defendant's argument that the Court of Federal Claims does not have jurisdiction over Fair Labor Standards Act cases.  Abbey, 745 F.3d at 1369.

(2007))).  In deciding a motion to dismiss for failure to state a claim, the court "must accept as true all the factual allegations in the complaint, and must indulge all reasonable inferences in favor of the non-movant."  Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted).  However, the court need not "accept as true[,] legal conclusions" asserted by the non-movant.  In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1331 (Fed. Cir. 2012) (quoting Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008)).

Enacted in 1938, the FLSA governs minimum wage and overtime compensation. See 29 U.S.C. §§ 201–219.  The Department of Labor (DOL) administers the FLSA for the private sector, and it has promulgated regulations accordingly.  See 29 C.F.R. Ch. V. In 1974, Congress extended the reach of the FLSA to federal employees, see Fair Labor Standards Act of 1974, Pub. L. No. 93-259, § 6, 88 Stat. 55, and authorized the Office of Personnel Management (OPM) to administer the FLSA for federal employees in a manner consistent with the DOL's administration of the Act for the private sector, 29 U.S.C. § 204(f).  In the absence of pertinent OPM regulations, the parties have relied on DOL regulations to support their various arguments.[6]  Counsel also have pointed to various DOL statements of general policy found in the federal register.  E.g., Interpretative Bulletin on the General Coverage of the Wage and Hours Provisions of the Fair Labor Standards Act of 1938, 29 C.F.R. § 776.4.  A policy statement or interpretative regulation does not have the force of law, but is potentially instructive.  See Batterton v. Francis, 432 U.S. 416, 425 n.9 (1977).

The court notes that plaintiffs are federal workers subject to OPM regulations, and not to the DOL corollaries.  See Billings v. United States, 322 F.3d 1328, 1331–32 (Fed. Cir. 2003).  However, when a DOL regulation or policy statement speaks to a matter for which there is no correlative OPM regulation, and the matter does not require a distinction between private and public employees, the court may consider the DOL regulation or policy statement for constructive guidance.  See Bates v. United States, 60 Fed. Cl. 319, 321 n.3 (2004) ("While 'caution dictates against simply importing DOL-created standards into the federal sector without any conscious rulemaking at either DOL or OPM,' we believe it is appropriate to look to [DOL standards] for persuasive guidance where the OPM regulations are unclear.") (quoting Adams v. United States, 40 Fed. Cl. 303, 306–07 (1998)); Aamold v. United States, 39 Fed. Cl. 735, 739 n.4 (1997) ("OPM's regulations and interpretations must be consistent with the FLSA itself and with the standards set by DOL for the private sector.  While OPM regulations are controlling . . . the court can also consider DOL's regulations.") (citations omitted).

---

[6]     The court notes that in certain instances, however, the parties have attempted to rely on DOL regulations or guidance without mention of OPM corollaries.  For example, neither party cited to OPM minimum wage (5 C.F.R. § 551.301) or overtime (5 C.F.R. § 551.501) regulations in its arguments to the court.

III.    Discussion

The legal question squarely presented in this case is whether plaintiffs can recover under the FLSA for a short delay in the payment of their wages.  The issue is one of first impression for this court.  Contending that no FLSA violation has occurred, defendant urges the court to dismiss plaintiffs' minimum wage and overtime claims.  The arguments for dismissal put forward by defendant may be summarized as follows:  (1) the FLSA "is designed to protect low wage workers who are not paid minimum wage for their work or are not paid at all, [but is not designed to apply to] employees like plaintiffs whose pay was delayed only a short time," and (2) plaintiffs lack the requisite authority for their claim because the FLSA and OPM regulations, by their plain language, do not require payment of wages on a particular day, and the Court of Appeals for the Federal Circuit has not addressed whether a short delay in the payment of wages constitutes a violation of the FLSA.  Def.'s Mot. 6–7.

Defendant further argues that Count Three concerning FLSA exempt plaintiffs should be dismissed from this action because these exempt individuals are not subject to FLSA requirements.  Def.'s Mot. 28–29.  Defendant adds that even if the court were to determine that an FLSA violation occurred, no damages could be obtained because an award of liquidated damages would be unwarranted in these circumstances.  Def.'s Mot. 15.  The court addresses defendant's arguments in turn.

A.      Plaintiffs Have Stated an FLSA Claim Based On Defendant's Failure to Pay Non-Exempt Employees Minimum Wage and Overtime Wages On Scheduled Paydays

The FLSA requires that "[e]very employer . . . pay to each of his employees who in any workweek is engaged in commerce . . . wages at the following rates . . . $7.25 an hour."[7]  29 U.S.C. § 206(a)(1)(C).  The OPM minimum wage regulation provides, "[A]n agency shall pay each of its employees wages at rates not less than the minimum wage . . . for all hours of work. . . .  An employee has been paid in compliance with the minimum wage provisions of this subpart if the employee's hourly regular rate of pay . . . for the workweek is equal to or in excess of the rate specified . . . ."  5 CFR § 551.301(a)–(b).

If the covered employee works more than forty hours in a workweek, he or she is entitled to pay that is not less than one and one-half the regular pay for the excess hours.  29 U.S.C. § 207(a); see also 5 C.F.R. § 551.501 ("An agency shall compensate an employee who is not exempt . . . for all hours of work in excess of 8 in a day or 40 in a

---

[7]     The minimum hourly wage in effect during the government shutdown was $7.25.  See 29 U.S.C. § 206(a)(1)(C).

workweek at a rate equal to one and one-half times the employee's hourly regular rate of pay . . . .").

The government argues that its late payment of wages to plaintiffs was not an FLSA violation when considered properly under a "totality of the circumstances" standard.  Def.'s Mot. 21–22.  In defendant's view, the circumstances precluding a finding of an FLSA violation are at least two-fold:  (1) the legal constraint imposed by the Anti-Deficiency Act, 31 U.S.C. § 1341(a), which prohibited defendant from making payments during the lapse in appropriations; and (2) the resultant short delay in the payment of owed wages.  See Def.'s Mot. 17–22.

Plaintiffs contend that defendant's argument cannot stand.  See generally Pls.' Opp'n 9–15.  Plaintiffs assert that the "usual rule" for a missed regular payday—as recognized by various courts—applies here.  Id. at 10.  Under the "usual rule," an FLSA claim accrues at the time of a missed regular payday and, as plaintiffs aver, a violation occurs at that same time.  Id.

The court agrees with plaintiffs.

1.    A Violation of the FLSA Occurred When Plaintiffs Were Not Paid "On Time"

Defendant acknowledges that the FLSA requires that employers pay minimum wage and overtime wages under certain circumstances; but defendant observes that neither the Act nor the OPM regulations define "prompt payment," "timely payment" or "payday."  Def.'s Mot. 15, 17.  "Nor does the Act explicitly require that wages must be paid on a particular day."  Id. at 17.

Defendant attempts to distinguish the facts of this case from other cases in which courts found that an FLSA violation occurred by pointing out that other FLSA cases have involved much longer periods of non-payment.  Id. at 18.  Defendant asserts that in such cases, either "an employer has substantially delayed payment, amounting to months or even years, or an employer clearly attempted to evade the Act."  Id. (citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 700–01 (1945) (finding an FLSA violation where an employee was finally paid overtime over two years after he left his employment); United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 491 (2d Cir. 1960) (finding an FLSA violation where employees were required to work additional overtime with the understanding that they would be paid at some indefinite future date and where they were not paid for up to seventeen months after they performed the work); Calderon v. Witvoet, 999 F.2d 1101, 1107 (7th Cir. 1993) (finding an FLSA violation where farm workers were not paid their full pay until the end of the farm season, which was weeks and months after the performed work)).

Defendant insists that the delay in payment here was not as egregious as in the cited cases, and there were no "attempts by the [g]overnment to evade the provisions of the statute." Def.'s Mot. 19.  Moreover, plaintiffs in this action were paid approximately two weeks after their regularly scheduled paydays.[8]  See id.

Defendant is correct that no explicit timeline for the payment of wages is set forth either in the FLSA or in the relevant regulations.  Nonetheless, the court must consider the Supreme Court's interpretive guidance regarding the FLSA in the 1945 decision, Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707 (1945).  Observing that the FLSA minimum wage provision requires "on time" payment, the Court held, inter alia, that plaintiff was entitled to liquidated damages under the Act even though he had an agreement with his employer in which he waived his rights to such damages.  Id. at 707. The Supreme Court explained:

> [The FLSA] constitutes a Congressional recognition that [the] failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living "necessary for health, efficiency, and general well-being of workers" and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well being.

Id. (emphasis added).

When applying the Supreme Court's "on time" mandate, courts have determined almost universally that an FLSA claim accrues, for limitations purposes, when an employer fails to pay workers on their regular paydays, and that a violation of the Act also occurs on that date.[9]  See, e.g., Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993)

---

[8]     Defendant also offered the alternative argument that "the official payday shifted and Federal employees were technically actually paid on their official payday."  Def.'s Reply 12.  Without further explanation from defendant, the court cannot evaluate this bare and dubious contention, raised for the first time in a reply brief, and thus, the court does not address it any further in this ruling.

[9]     Plaintiffs also point to a Department of Labor (DOL) policy statement reflecting the holding expressed in many FLSA cases regarding the accrual of an FLSA claim in a statute of limitations context:  "The courts have held that a cause of action under the [FLSA] for unpaid minimum wages or unpaid overtime compensation and for liquidated damages 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends."  29 C.F.R. § 790.21(b).

(Biggs II); Olson v. Superior Pontiac-GMC, Inc., 765 F.2d 1570, 1579 (11th Cir. 1985), modified, 776 F.2d 265 (11th Cir. 1985); Atlantic Co. v. Broughton, 146 F.2d 480, 482 (5th Cir. 1944); Birbalas v. Cuneo Printing Industries, 140 F.2d 826, 828 (7th Cir. 1944).

To date, the Federal Circuit has not addressed the issue of when an FLSA violation occurs.  However, in a decision considering when an FLSA claim accrues, the Federal Circuit acknowledged the "usual rule . . . that a claim for unpaid overtime under the FLSA accrues at the end of each pay period when it is not paid."  Cook v. United States, 855 F.2d 848, 851 (Fed. Cir. 1988) (citing Beebe v. United States, 640 F.2d 1283 (1981)).

In Cook, the Federal Circuit had ruled previously that federal civilian fire fighters were due overtime related to their "remain[ing] on call at their stations when not fighting fires."  See id. at 849.  The Circuit Court subsequently considered, inter alia, when the fire fighters' claims accrued for statute of limitations purposes.  Id.  The Appeals Court determined that notwithstanding the usual rule "that a claim for unpaid overtime under the FLSA accrues at the end of each pay period when it is not paid, . . . in the specific circumstances of this case, the right of fire fighters to statutory overtime depended on . . . the performance of [a study of hours of work]."  Id. at 851.  Accordingly, the fire fighters' claims were found to have accrued on the date the study was completed.  Id.

Decisions from this court have applied the "usual rule," as acknowledged by the Federal Circuit in Cook, to determine the date of claim accrual for the purpose of calculating the expiration of the statute of limitations in FLSA cases.  See, e.g., Moreno v. United States, 82 Fed. Cl. 387, 404 n.37 (2008) ("[A] cause of action to recover those wages plus liquidated damages under the FLSA was available to plaintiffs immediately following those pay periods, when it was clear that their paychecks included neither overtime pay nor liquidated damages."); see also Corrigan v. United States, 68 Fed. Cl. 589, 592–93 (2005), aff'd, 223 F. App'x 968 (Fed. Cir. 2007).

Arguing that accrual and the occurrence of a violation require separate inquiries, defendant in this case seeks to distinguish the Federal Circuit's determination regarding the accrual of an FLSA claim from a determination regarding the time at which an FLSA violation is deemed to have occurred.  See Def.'s Reply 4–5.  Defendant relies on a case from the Second Circuit, finding that no FLSA violation had occurred solely by virtue of an employer gradually changing its pay schedule to implement a biweekly payroll in place of a weekly payroll that had been used previously.  Id. at 11–12 (discussing Rogers v. City of Troy, N.Y., 148 F.3d 52, 54–55 (2d Cir. 1998)).  The change in schedule resulted in plaintiffs' pay being delayed by one day each week for five weeks.  Rogers, 148 F.3d at 54.  The Second Circuit distinguished the case from other FLSA cases that involved "substantial delays in payment," id. at 56, and the court created an analytical framework that allowed its finding in that instance—that the one day delays did not reflect a violation in the substantive wage and hour provisions of the Act, absent other factors:

9

We hold that the FLSA does not prohibit an employer from changing the payday of its employees for a valid business purpose, provided that: (a) the change is made for a legitimate purpose; (b) there is no unreasonable delay in the payment of wages; (c) the change is intended to be permanent; and (d) the change does not result in the violation of the substantive wage and hour requirements of the Act.

Id. at 60.

The facts of the Rogers case are clearly distinguishable from the facts here.  In Rogers, the employer was implementing a permanent change in its pay schedule for administrative purposes; the regularly scheduled payday was changing for a legitimate reason.  Notwithstanding the factual differences between the cases defendant asserts that the Second Circuit's decision in Rogers is instructive.  Def.'s Mot. 20.  The government claims that a test tailored to the facts of this case, like the one created by the Rogers court, would be appropriate, such as the totality of the circumstances approach it proposed.  Id. at 21–22.

Plaintiffs urge the court to reject the multi-factorial totality of the circumstances test favored by defendant and to adopt instead a bright-line rule that an FLSA violation occurs at the time of the missed payday.  See Pls.' Opp'n 11–13, 26–29.  As support for their claim that a frank violation of the Act has occurred, plaintiffs cite a case from the Ninth Circuit Court of Appeals, Biggs II, 1 F.3d 1537, in which the court found a violation of the FLSA on facts strikingly similar to the facts in the case at bar.  In Biggs II, the Ninth Circuit considered whether the California state government violated the FLSA by paying state workers nearly two weeks late because of a state budgetary impasse.  Id. at 1538.  The court affirmed the district court's ruling that the state's failure to issue paychecks promptly when due constituted an FLSA violation.  Id.  The Ninth Circuit stated that "under the FLSA[,] wages are 'unpaid' unless they are paid on the employees' regular payday."  Id.

Factually important in the Biggs II case was the state legislature's failure to pass a budget, and the state law prohibition against paying state employees prior to the approval of a budget.  Id.  There, the state argued that "since full compensation was never in doubt, and California was merely late in paying its employees, there was no violation of the FLSA.  Id. at 1539.  In effect, [the state's] position [was] that only nonpayment, not late payment, [was] prohibited by the Act."  Id.

The Ninth Circuit rejected the state's arguments that no violation had occurred, reasoning:

We start with [29 U.S.C.] § 206(b).  It directs every employer to pay the minimum wage.  The obligation kicks in once an employee has done covered work in any workweek.  To us, "shall pay" plainly connotes shall

10

make a payment.  If a payday has passed without payment, the employer cannot have met his obligation to "pay" . . . The only logical point . . . [at which] wages become "unpaid" is when they are not paid at the time work has been done, the minimum wage is due, and wages are ordinarily paid—on payday.

Biggs II, 1 F.3d at 1539–40.  The court concluded that "the FLSA is violated unless the minimum wage is paid on the employee's regular payday."  Id. at 1541.

Here, defendant would have the court ignore the Ninth Circuit's majority ruling in Biggs II, and rely instead on the reasoning set forth in the dissent and concurrence, which agreed with the majority's ultimate holding but adopted the district court's more flexible rationale.  Def.'s Mot. 21 (citing the district court's decision in Biggs v. Wilson, 828 F. Supp. 774 (E.D. Cal. 1991) (Biggs I), aff'd Biggs II.  Urging the court to find that "payment was reasonably prompt under the totality of the circumstances," Def.'s Mot. 21, defendant points to the following excerpt from the district court in Biggs I for support:

> The requirement of prompt payment should not be construed to impose strict liability on an employer for every delay in payment, however slight or for whatever reason.  Indeed, such a result would threaten to bring about the financial ruin of many employers, seriously impair the capital resources of many others, provide a windfall to employees, and burden the court with excessive and needless litigation, all in direct contravention to the expressed intent of Congress.  Instead, it must be interpreted to require payment which is reasonably prompt under the totality of the circumstances in the individual case.

Id. (quoting Biggs I, 828 F. Supp. at 777) (citation omitted).

Defendant endorses the same totality of the circumstances test that the Ninth Circuit expressly rejected in Biggs II.  The Ninth Circuit stated:

> State officials urge us to distinguish between late payment and nonpayment, but offer us no principled way to make such a distinction.  We cannot come up with one either.  We could try to create a balancing test, as the district court did when it wrote that the FLSA "require[s] payment which is reasonably prompt under the totality of the circumstances in the individual case."  Any kind of sliding scale we can think of, however, would be contrary to the statute's direction that employers shall "pay" the minimum wage and that employees are entitled to recover "unpaid" minimum wages.  It also would force employees, employers, and courts alike to guess when "late payment" becomes "nonpayment" in order to determine whether the statute of limitations has begun to run, the amount of

unpaid wages and liquidated damages to be awarded, and how much prejudgment interest has been accrued. The due date, and with it when the employee actually gets paid, would become a moving target. Such a framework would contravene our obligation to construe the FLSA to the furthest reaches consistent with Congress's intent to protect employees, and [would] run counter to the purpose of the FLSA to "protect certain groups . . . from substandard wages and excessive hours."

Biggs II, 1 F.3d at 1540 (citations omitted).

Defendant argues in this case for the adoption of a totality of the circumstances test that would credit the government for factors such as: (1) the potential for the violation of the Anti-Deficiency Act if the government had paid plaintiffs; (2) the brevity of the delay in the payment of the employees' wages; and (3) the "legitimate reason" for the wage nonpayment offered by the government. See Def.'s Reply 11. At oral argument, defendant identified additional factors for consideration under the proposed totality of the circumstances test: (1) the employees' knowledge that they would receive payment for the work they performed, although admittedly they did not know when; (2) that there was no willful attempt to thwart the FLSA; and (3) the government's payment of their employees as quickly as possible. Tr. Oral Arg., May 9, 2014, at 58–62.

The court declines to accept the test proposed by defendant because the weight of the most analogous authority militates in favor of applying the standard known as the "usual rule," endorsed by the Federal Circuit. As the Appeals Court in Biggs II observed, if an FLSA claim accrues when an employee is not paid on a regularly scheduled payday, the FLSA violation also must occur on that day. Biggs II, 1 F.3d at 1540–41. To hold otherwise would create sufficient uncertainty as to when a violation occurs, and statutory enforcement would prove unworkable. Thus, defendant's effort to differentiate between the time at which accrual is determined and the time at which a statutory violation occurs does not persuade.

Defendant asserted, at oral argument, that under the bright line rule for which plaintiffs advocate, any delay in payment would constitute an FLSA violation. Tr. Oral Arg. 12. Defendant offered the following hypothetical as an exemplar: "[suppose] the check gets lost in the mail, [or] the check is delivered to [a] next-door neighbor who doesn't get it to [the employee until] the next day or a couple of days later. Under plaintiffs' bright line, per se, strict liability rule, [each of these examples] would be a violation of the FLSA and the government would be held responsible for liquidated damages." Id. Defendant's example, however, reflects a misapprehension of how the timeliness rule applies and improperly conflates a finding of an FLSA violation with an award of liquidated damages.

Even if the employer were responsible for the delay in payment in defendant's offered hypothetical, an award of liquidated damages would not necessarily be made. As

excepted under the statute, liquidated damages are not available if an employer can show that it acted in good faith and that it had a reasonable belief that it was complying with the FLSA.  29 U.S.C. § 260; see supra Part III.C.  At this stage in the proceedings, the court does not address whether liquidated damages are appropriate: rather the court considers only—on motion by defendant—whether an FLSA violation occurred when defendant failed to pay plaintiffs their minimum and overtime wages on their regularly scheduled paydays and thus, whether plaintiffs have stated a claim.

The FLSA requires—and the Supreme Court has recognized approvingly—that an employee receive on time payment for work performed.  The court understands such timeliness to mean that an employer pays an employee on the regularly scheduled paydays.[10]  As the Ninth Circuit observed in Biggs II, determining when late payment becomes nonpayment creates "a moving target" that has the grave potential to subvert the intended purpose of the FLSA.  It is the view of the court that the government's payment to employees two weeks later than the Scheduled Paydays for work performed during the October 2013 budget impasse constituted an FLSA violation.  Accordingly, plaintiffs have stated a claim for relief under Counts One and Two.

> 2.   Finding a Violation of the FLSA In These Circumstances is Consistent With the FLSA's Purpose

Defendant argues that the FLSA was not intended to apply in circumstances such as this where government workers face a modest delay in the receipt of their pay.[11]  See

---

[10]   Defendant asserted at oral argument "there are no regularly scheduled paydays in the [g]overnment," where there are four pay centers that operate on different schedules.  Tr. Oral Arg. 8.  But this argument is unavailing.  Each employee has his or her regularly scheduled payday that is informed by agency practice, and is established by a course of conduct.  A deviation from such practice or course constitutes a violation of the Act.

[11]   Defendant also suggested at oral argument that the financial damage some plaintiffs might have suffered—in the manner of being unable to pay bills or medical expenses, and incurring fees—may have occurred not because the government failed to pay the employees on time as required under the law, but because plaintiffs may have made "poor financial management decisions."  Oral Arg. Tr. 88.  While not relevant to the court's inquiry into whether plaintiffs have stated a claim for relief, the court notes that at least some government employees, who may be plaintiffs herein, were working at the GS-04 or GS-05 levels, and had annual salaries starting around $28,000 in 2013.  See Pls.' Opp'n 16 (citing OPM, Salary Table 2013-RUS, http://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2013 /general-schedule/rus.pdf (last visited April 11, 2014)).  Such salaries leave families a narrow margin, particularly when—as plaintiffs in this action have described—child care expenses continue and unexpected health-related expenses arise.  See id. at 16 n.3.  Moreover, there is evidence that the government anticipated the hardships its employees might face.  The OPM web site provides sample

Def.'s Mot. 15.  Placing heavy emphasis on the legislative history of the Act, the government posits that plaintiffs were not the type of low wage workers Congress intended to protect.  See id. at 15–16.  In support of its position, defendant points to two Supreme Court cases.  The first of which is the Supreme Court's 1945 discussion of the FLSA in the case of Brooklyn Savings Bank v. O'Neil.  There, the Supreme Court observed, "[t]he legislative debates indicate that the prime purpose of the [Act] was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." Id. at 15 (quoting Brooklyn Sav. Bank, 324 U.S. at 707 n.18 (citations omitted)).

Defendant also cited Barrentine v. Arkansas-Best Freight Systems, Inc., in which the Supreme Court stated, "[t]he principal congressional purpose in enacting the [legislation] was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'"  Id. at 15–16 (quoting Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981)).

Plaintiffs retort that federal workers merit correlative wage protection and note that "Congress extended the protections of the FLSA to federal workers in 1974 without suggesting that its protections should be less for them than for other workers," Pls.' Opp'n 8; see also id. at 15–16 (quoting 29 U.S.C. § 203(e)(2)(A), which defined covered employees broadly).  Plaintiffs further note that many government workers, including plaintiffs, are not highly compensated employees as defendant seems to suggest.  Id. at 16.  Rather, the "opt-in plaintiffs include many GS-04 and 05 employees, who have annual salaries ranging from about $28,000 to about $41,000." Id. (citing OPM Salary Table 2013-RUS, https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2013/general-schedule/rus.pdf (last visited April 11, 2014)).  And, it is these employees who are intended to benefit from the Act.

Defendant's argument that plaintiffs are not the type of employees meant to be protected by the FLSA would appear to the court to be misguided.  By extending the reach of the FLSA to include federal workers, Congress clearly intended to protect such employees.  As must other employers, the government must pay minimum wages and overtime compensation to its employees, according to the plain language of the FLSA.  Contrary to defendant's arguments, a ruling for plaintiffs in this instance is consistent

---

letters for employees' use in negotiating for late payment with creditors, mortgage companies, and landlords.  OPM, Pay & Leave Furlough Guidance, Sample Letters for Furloughed Employees' Creditors, http://www.opm.gov/policy-data-oversight/pay-leave/furlough-guidance/#url=Shutdown-Furlough (last visited July 31, 2014).

with the purpose of the Act "to protect <u>all</u> covered workers from substandard wages." <u>Barrentine</u>, 450 U.S. at 739 (citing 29 U.S.C. § 202(a)) (emphasis added).

Accordingly, the court finds that defendant's policy argument is unpersuasive and does not alter the court's view that plaintiffs have stated a claim, in Counts One and Two, for relief pursuant to the Act. However, the court does not find plaintiffs' arguments regarding the appropriate standard for determining whether plaintiffs were paid minimum wage to be persuasive. The parties' disagreement on this issue has been set forth in the briefing. To assist the parties in moving forward with greater clarity, the court addresses this issue now.

>    3.    The Workweek Standard is the Appropriate Test For Determining
>           Which Plaintiffs Were Paid Minimum Wage

The parties disagree about the appropriate standard for measuring whether plaintiffs were paid minimum wage on time. Defendant contends that minimum wage should be calculated according to a bi-weekly measurement. Def.'s Mot. 23. Based on defendant's proposed calculation, any potential plaintiff who was paid $580 or more in his or her bi-weekly check for the Pay Period has not stated a claim for relief. <u>Id.</u> (explaining that $7.25 per hour, multiplied by 40 hours per week, multiplied by 2 weeks, equals $580). Defendant, however, provides no authority for its proposed bi-weekly approach, just a bare assertion. Without more, defendant's position does not persuade.

In contrast, plaintiffs propose that minimum wage be analyzed on an hour-by-hour basis. Under this approach, a plaintiff's salary on an aggregate weekly or bi-weekly basis would be irrelevant. Instead, any single hour that either went unpaid or underpaid would be an FLSA violation. <u>Id.</u> Pls.' Opp'n 19–22.

In support of the hourly standard it seeks, plaintiffs point to a Wage and Hour Release issued in 1940. The release stated that "courts might hold to be a violation of the law [a circumstance] where the employer does not pay anything for hours properly considered to be hours worked, such as periods of waiting time." Pls.' Opp'n 20 (quoting <u>Dove v. Coupe</u>, 759 F.2d 167, 171 (D.C. Cir. 1985), purporting to quote from Wage & Hour Release No. R-609 (Feb. 5, 1940)).

Plaintiffs also rely on the reasoning provided by the district court in <u>Norceide v. Cambridge Health Alliance</u>, 814 F. Supp. 2d 17, 23–26 (D. Mass. 2011), <u>class decertified by</u> 2014 WL 775453 *4 (D. Mass. Feb. 24, 2014) (acknowledging that an hour-by-hour method of calculating minimum wage is the "minority approach"). In that case, health workers complained that they had not been compensated for time worked during meal breaks, and before and after shifts, amounting to about two to four hours of work each week in violation of the FLSA. <u>Norceide</u>, 814 F. Supp. 2d at 19–20. Defendant in that case argued that there was no FLSA violation because plaintiffs were never paid less than minimum wage for a workweek. <u>Id.</u> at 21. The court nonetheless ruled that the proper

inquiry was whether plaintiffs were paid minimum wage for each hour of work.  Id. at 23.
In doing so, the court relied on language from the FLSA requiring a minimum hourly
wage and considered the overarching purpose of the FLSA.  Id.

Plaintiffs in the instant case acknowledge that the majority approach (as further
explained below) is to calculate minimum wage on a workweek basis rather than on a
biweekly or hour-by-hour basis.  Pls.' Opp'n 20–21.  However, they argue that an hourly
calculation is appropriate here, as in Norceide, because of two unusual aspects of this
case.  Id. at 20.  First, in most cases in which an hourly approach was rejected, employees
were not paid for a specific period of time in the day, such as a meal break during which
they were required to work, but otherwise were paid for hours worked during a workday.
Id.  In contrast, here, employees were paid for work done on September 29 or 30, but not
at all for work performed during the Five Days.  Thus, plaintiffs argue, "[i]f a federal
employee was paid $26.25 per hour for eight hours of work on September 20, 2013, it is
fiction to regard her effective pay rate as $5.25 per hour for the entire week."  Id. at 21.

Second, plaintiffs contend that "what happened to federal employees was
especially damaging to their finances."  Id.  In contrast to the employee who is forced to
work through break times but still knows in advance her total compensation, plaintiffs
here were not paid on time for work performed during the Five Days, and did not know
how long they would have to wait to be paid.  Id. at 21–22.

The FLSA minimum wage provision requires employers to pay minimum wage
"to each of his employees who in any workweek is engaged in commerce . . . ."  29
U.S.C. § 206(a) (emphasis added).  The OPM minimum wage regulation provides that
"an agency shall pay each of its employees wages at rates not less than the minimum
wage . . . for all hours of work . . . ."  5 C.F.R. § 551.301(a)(1).  However, in the
following subpart, the regulation provides that, "[a]n employee has been paid in
compliance with the minimum wage provisions of this subpart if the employee's hourly
regular rate of pay . . . for the workweek is equal to or in excess of the rate specified
. . . ."  5 C.F.R. § 551.301(b).

A DOL interpretive bulletin further supports a workweek standard:

The workweek is to be taken as the standard in determining the
applicability of the Act.  Thus, if in any workweek an employee is engaged
in both covered and noncovered work he is entitled to both the wage and
hours benefits of the Act for all the time worked in that week.

29 C.F.R. § 776.4(a) (footnote omitted).

Because there is no binding authority on this court regarding the standard for
computing minimum wage under the FLSA, the court looks to other federal courts for
guidance.  Of the courts that have considered this issue, an overwhelming majority have

interpreted the FLSA to require a "workweek" standard for the calculation of minimum wages due.  See, e.g., Morgan v. SpeakEasy, LLC, 625 F. Supp. 2d 632, 651 (N.D. Ill. 2007); Rogers v. Savings First Mortgage, LLC, 362 F. Supp. 2d 624, 631 (D. Md. 2005); see also Christofferson v. United States, 77 Fed. Cl. 361, 364 n.2 (2007) (noting that courts have traditionally used the workweek compliance approach such that, "so long as total pay at the end of the week divided by the number of hours worked is no less than the minimum wage rate, [29 U.S.C.] section 206 has not been violated.").

The court acknowledges that the use of a workweek measurement rather than an hourly measurement to calculate pay could be viewed as something of a "contrivance," see Norceide, 814 F. Supp. 2d at 24, where plaintiffs were paid their regular wage for certain hours, but were paid nothing for others.  Nonetheless, the language of the Act focuses on the aggregate pay for all work performed within a workweek.  Thus, the court elects to adopt the majority approach in this case and apply a workweek standard for measuring minimum wage.  Based on this calculation method, any potential plaintiff who was paid more than $290 ($7.25 multiplied by 40 hours) for the Week must be dismissed from the case.  This ruling also applies to limit any prospective opt-in plaintiffs.

4.      Defendant's Additional Arguments Regarding Overtime Pay Are Unavailing

Plaintiffs allege in Count Two that defendant failed to pay overtime compensation to certain employees.[12]  The FLSA overtime provision states:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  The OPM overtime regulation further provides that "[a]n agency shall compensate an employee who is not exempt [from the Act] for all hours of work in

---

[12]     Defendant argued in its Motion to Dismiss that plaintiffs had failed to state an overtime claim under the FLSA where the complaint contained no allegations that any of the original nonexempt plaintiffs had "worked in excess of the applicable threshold for overtime pay and was not compensated for it."  Def.'s Mot. 27.  Plaintiffs responded that their allegations were sufficient from which to infer that at least one nonexempt plaintiff worked overtime during the Five Days, see Pls.' Opp'n 30; however, "to forestall any justification for delay," plaintiffs have amended their complaint to state expressly that one nonexempt original plaintiff, Mr. Roberts, worked overtime for which he was not timely paid.  2d Am. Compl. ¶ 37; see Pls.' Opp'n 31.  Plaintiffs, therefore, have addressed defendant's concern on this point.

excess of 8 in a day or 40 in a workweek at a rate equal to one and one-half times the employee's hourly regular rate of pay . . . ." 5 C.F.R. § 551.501(a).

As with the FLSA minimum wage provision, no explicit timeline for overtime compensation is set out in the Act.  A DOL interpretative bulletin states the general rule that "overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends." 29 C.F.R. § 778.106.  While this guidance would clearly support plaintiffs' position that an FLSA overtime violation occurs at the time of a missed payday, defendant argues that the regulation actually supports its position that the FLSA provides "considerable flexibility," see Def.'s Reply 8–9, because it states further:

> When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next pay day.

29 C.F.R. § 778.106.

Pursuant to this guidance, the government alleges that its late payment of overtime wages was acceptable because defendant in this circumstance "was not able to compute the correct amount of compensation for Federal workers [while] non-[excepted] employees, such as Human Resource employees, were not working." Def.'s Reply 9.

The DOL interpretation affords employers a measure of leeway in paying employees' any overtime owed "when the correct amount of overtime compensation cannot be determined." 29 C.F.R. § 778.106.  Whether the government could or could not determine, compute, or arrange for the payment of overtime compensation during the October 2013 shutdown is a factual question that might be explored further by the parties during the next phase of litigation.  On a motion to dismiss, however, the court must draw all reasonable inferences in favor of plaintiffs, and accept as true plaintiffs' factual allegations.  See Sommers Oil Co., 241 F.3d at 1378.  Plaintiffs have alleged facts sufficient for the court to find that plaintiffs have stated a claim for an FLSA violation where defendant failed to pay plaintiffs their earned overtime pay on their Scheduled Paydays.

B.    Plaintiffs Have Failed to State a Claim With Respect to FLSA Exempt
      Employees; Count Three is Dismissed

Among the potential plaintiffs in this case are those who have managerial, professional, or administrative exemptions from FLSA protections and thus, are described as FLSA exempt employees. See 2d. Am. Compl. ¶ 41. The pertinent OPM regulations define "FLSA exempt" as "not covered by the minimum wage and overtime provisions of the Act." 5 C.F.R. § 551.104; see also 29 U.S.C. § 213(a) (enumerating positions that are exempt from the FLSA). Notwithstanding the clear regulatory definition of an FLSA exempt employee, plaintiffs put forward a contorted argument that such exempt employees are covered under the FLSA overtime provision in this circumstance. See 2d Am. Compl. ¶¶ 41–50.

In particular, plaintiffs contend that an exemption from the FLSA is dependent upon being paid on a "salary basis." See id. ¶ 41. They argue that "[e]mployees are not exempt from payment of overtime under the managerial, professional or administrative exemptions unless, among other requirements, they are paid on a salary basis." Id. According to plaintiffs, when an employer fails to pay employees on the agreed compensation schedule, as happened here, that failure to pay is inconsistent with payment on a "salary basis." Id. And purportedly because employees were not paid on a "salary basis," they were not exempt from payment of overtime at the rate of one and one-half times their regular rate for that week. Id. at ¶¶ 42–43.

Defendant argues that the plain language of the applicable regulation precludes the application of the FLSA's minimum wage or overtime requirements to FLSA exempt employees.[13] Def.'s Mot. 28 (citing 5 C.F.R. § 551.104). Quite simply, "FLSA exempt employees cannot bring a claim for a violation of the [FLSA]." Id. at 29. Defendant adds that plaintiffs' reliance on the "salary basis" test is misplaced because that test does not apply to federal employees according to Federal Circuit precedent. Id. (citing Billings, 322 F.3d at 1334).

In Billings, the Federal Circuit affirmed the trial court's summary judgment in favor of the government, dismissing a claim by FLSA exempt federal employees for FLSA overtime that is ordinarily available only to non-exempt employees. 322 F.3d at 1330, 1335. The exempt federal employees argued they were only exempt so long as the government paid them on a "salary basis," among other requirements. Id. at 1330. They

---

[13]    Defendant also argues that Count Three should be dismissed for failure to state a claim because no FLSA exempt original plaintiff alleged explicitly that he had worked overtime. Def.'s Mot. 28; see also, supra, n.12 (describing the same argument made by defendant as to Count Two). Plaintiffs remedied this potential shortcoming, along with the same possible problem regarding Count Two, in their Second Amended Complaint, by alleging that certain exempt plaintiffs worked overtime. See 2d Am. Compl. ¶ 37.

reasoned that the government's failure to adhere to the "salary basis" standard rendered their exempt classification inappropriate. Id. at 1330–31. Instead, they argued, they should be treated as non-exempt and thereby, entitled to overtime. Id. In support of their claims, the federal exempt employees referred to DOL regulations, which provided authority for the proposition that exempt status was dependent on the employer satisfying the salary-basis test.[14] See id. at 1331–32.

The Federal Circuit disagreed. OPM administers the FLSA with respect to federal sector employees. Id. at 1333. Therefore, OPM regulations govern federal employee exempt status so long as, inter alia, those regulations are: (1) reasonable; and (2) either consistent with DOL corollaries (applicable to the private sector) or different only insofar as "required to effectuate the consistency of application of the provision to both federal and non-federal employees." Id. at 1333–34. Here, the applicable OPM regulation defined exempt status by and through its definition of "executive" federal employees. Id. at 1333–35. The definition was a reasonable interpretation of the FLSA and to the extent it varied with the DOL standard, "the variance . . . [was] no more than needed to accommodate the difference between private and public sector employment." Id. Accordingly, OPM's definition of "executive" governed the employees' exempt status, not the DOL's salary-basis test. See id. at 1335.

Plaintiffs' efforts to distinguish Billings do not persuade. See Pls.' Opp'n 31–36 (arguments). The Federal Circuit plainly decided that OPM regulations defining exempt status governed, rather than DOL's salary-basis test. Plaintiffs herein remain subject to the limitations of their exempt status and, accordingly, have failed to state a claim in Count Three for overtime as de facto non-exempt employees. Count Three is **DISMISSED**.

---

[14]    The relevant DOL regulation (with no OPM counterpart) that plaintiffs in Billings, and plaintiffs in the instant case, wish to invoke, defines salary requirements for FLSA exempt employees in the private sector as follows:

> [a]n employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly . . . basis, a predetermined amount constituting all or party of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed . . . . [A]n exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.

29 C.F.R. § 541.602(a).

C.      Whether Liquidated Damages are Appropriate Will Depend on Whether
         Defendant Can Demonstrate Good Faith and a Reasonable Basis for
         Believing it was Compliant With the FLSA

The FLSA provides for liquidated damages for violations of its minimum wage
and overtime provisions. 29 U.S.C. § 216(b). "Any employer who violates the
provisions of section 206 or section 207 of this title shall be liable to the employee . . .
affected in the amount of their unpaid minimum wages, or their unpaid overtime
compensation, . . . and in an additional equal amount as liquidated damages." Id.
Through the use of the word "shall," Congress signaled its intent that a presumption of a
liquidated damages award follows a violation of the Act. See id.

However, there is a limited exception to the liquidated damages requirement:

> if the employer shows to the satisfaction of the court that the act or
> omission giving rise to such action was in good faith and that he had
> reasonable grounds for believing that his act or omission was not a
> violation of the [FLSA], the court may, in its sound discretion, award no
> liquidated damages or award any amount thereof.

29 U.S.C. § 260. This burden is borne by the employer. See Adams v. United States,
350 F.3d 1216, 1226 (Fed. Cir. 2003) ("The burden rests on the government to establish
its good faith and the reasonable grounds for its decision."). The burden, moreover, is a
"substantial" one, consisting of a subjective good faith showing and an objective
demonstration of reasonable grounds. Bull v. United States, 68 Fed. Cl. 212, 229 (2005),
clarified by 68 Fed. Cl. 276, aff'd, 479 F.3d 1365 (Fed. Cir. 2007) (citations omitted). To
establish good faith, defendant must show "an honest intention to ascertain what the
[FLSA] requires and to act in accordance with it." Id. (quoting Beebe, 640 F.2d at 1295).
Demonstrating reasonable grounds could be shown by "[p]roof that the law is uncertain,
ambiguous or complex." Id. (quoting same).

Defendant argues that if the court finds an FLSA violation, it should exercise its
discretion and not award liquidated damages. Def.'s Mot. 23–26. Defendant's
arguments against the award of liquidated damages overlap with its arguments against a
finding of an FLSA violation. The government argues that liquidated damages are
inappropriate where the government acted reasonably by paying wages as quickly as
possible after resolution of the budget impasse, and where the Anti-Deficiency Act
prohibited defendant from paying plaintiffs during the lapse. Id.

Plaintiffs respond that "the [g]overnment cannot possibly establish on a motion to
dismiss that it acted in good faith and had a reasonable basis for believing that it was
acting in conformity with the FLSA." Pls.' Opp'n 22. In addition, plaintiffs contend that
under the facts of this case, "it will be impossible for the [g]overnment ever to prove that

it acted in good faith and had a reasonable basis for believing that it was acting in conformity with the FLSA" because the law clearly required on time payment.  Id.

The Anti-Deficiency Act, upon which defendant relies, prohibits payment to employees when appropriated funds are not available.  See 31 U.S.C. § 1341(a)(1).  "An officer or employee of the United States Government . . . may not . . . make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation."  Id.

The government required plaintiffs to work during the October 2013 shutdown, however, pursuant to an emergency exception provision of the Anti-Deficiency Act, which states that the "government may not accept voluntary services for either [the United States Government or the District of Columbia] or employ personal services exceeding that authorized by law except for emergencies involving the safety of human life or the protection of property."  31 U.S.C. § 1342.

The employees who were required to work during the government shutdown "necessarily included prison guards, Federal air marshals, border patrols, and others," Def.'s Mot. 25, that is, those employees who were necessary for the "safety of human life or the protection of property," id. (quoting 31 U.S.C. § 1342).  Defendant insists that its failure to pay its employees was reasonable in light of the limitations imposed by the Anti-Deficiency Act.  See Def.'s Reply 14–16.  But whether its actions were reasonable is not the correct inquiry.  As noted previously, the exception to a liquidated damages award is available where the failure to pay was in good faith (a subjective inquiry) and the employer had reasonable grounds for believing the failure "was not a violation of the [FLSA]" (an objective inquiry).  See 29 U.S.C. § 260.

Neither party has addressed in any detailed manner whether the Anti-Deficiency Act operates to relieve the government of responsibility for the legal violations that might occur in the absence of Congressional appropriations.  The Supreme Court has stated that the Anti-Deficiency Act's requirements "apply to the official, but they do not affect the rights in this court of the citizen honestly contracting with the [g]overnment."  Salazar v. Ramah Navajo Chapter, 132 S. Ct. 2181, 2193 (2012) (quoting Dougherty v. United States, 18 Ct. Cl. 496, 503 (1883)).  Moreover, in 1892, the Court of Claims stated that "[a]n appropriation per se merely imposes limitations upon the Government's own agents; . . . but its insufficiency does not pay the Government's debts, nor cancel its obligations, nor defeat the rights of other parties."  Ferris v. United States, 27 Ct. Cl. 542, 546 (1892)).  The parties may elect to address this issue in further proceedings.

Defendant has not had the opportunity to present evidence of its good faith and the reasonable grounds permitted under the FLSA.  Going forward, defendant might elect to

do so.[15]  In any event, plaintiff is correct that it would be inappropriate to determine, on motion to dismiss, whether the government had reasonable grounds and good faith.  It may well be that the government can establish these defenses, but its opportunity to do so will come later on summary judgment or at trial.  Moreover, even if the court were to decide that a liquidated damages award is warranted, additional factual determinations remain to be made as to which employees, if any, are entitled to recover, and damages, if any, to which those employees would be entitled.

IV.     Conclusion

        Defendant's motion to dismiss for failure to state a claim as to Counts One and Two is **DENIED**.  Its motion as to Count Three is **GRANTED**.

        IT IS SO ORDERED.

                                            s/ Patricia Campbell-Smith
                                           PATRICIA CAMPBELL-SMITH
                                           Chief Judge

---

[15]     Defendant indicated in its Reply brief that it "agree[d] [with plaintiffs] that the [c]ourt should decide on the papers, without any discovery," the issue of liquidated damages.  Def.'s Reply 14.  However, given that defendant has not yet had an opportunity to present evidence at this stage of the litigation, the court offers defendant an opportunity to meet its burden, before the court makes a determination regarding the applicability of liquidated damages.