# In the United States Court of Federal Claims

No. 13-834C

(E-Filed February 13, 2017)

|  |  |  |
|---|---|---|
| DONALD MARTIN, JR., et al, | ) | Cross-Motions for Summary Judgment; RCFC 56(a); Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (2012); Award of Liquidated Damages for Violation of the Fair Labor Standards Act |
| Plaintiffs, | ) |  |
| v. | ) |  |
| THE UNITED STATES, | ) |  |
| Defendant. | ) |  |

Heidi R. Burakiewicz, Washington, DC, for plaintiffs.

Joseph E. Ashman, Trial Attorney, with whom were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

CAMPBELL-SMITH, Chief Judge

From October 1, 2013, through October 16, 2013, a Congressional budget impasse resulted in a partial shutdown of the federal government ("2013 shutdown"). See ECF No. 151 at 3. Plaintiffs in this case are current or former government employees who allege that they were not timely compensated for work performed during the shutdown, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (2012). See ECF No. 29-1. The court certified plaintiffs as a class on October 16, 2014. See ECF No. 46.

Plaintiffs have amended their complaint twice in this case. See ECF Nos. 1, 13, and 29-1. Defendant filed a motion to dismiss the first amended complaint, see ECF No. 23, and before the court ruled on the motion, plaintiffs filed a second amended complaint. In their second amendment, plaintiffs added more plaintiffs and deleted the claim that defendant had violated the Back Pay Act, but did not "add any new claims or legal

theories for the Government to address."  ECF No. 29 at 3.  See also ECF No. 37 (order granting leave to file second amended complaint and explaining points of amendment).  As such, the claims set forth in the first amended complaint and analyzed in defendant's motion to dismiss were the same as those remaining claims in the second amended complaint.

In its opinion on defendant's motion to dismiss, the court concluded that the first two claims were viable, and dismissed the third.  See ECF No. 38 at 23.  Accordingly, the following two claims were left before the court:  (1) failure to pay minimum wages timely as required under the FLSA, and (2) failure to pay overtime to members classified as non-exempt from the FLSA overtime provisions as required under the FLSA.  See ECF No. 29-1 at 13-15.

The parties now have filed cross motions for summary judgment.  Plaintiffs, in their motion for partial summary judgment, ask the court to determine: (1) whether the government owes liquidated damages to certain employees for violating the FLSA during the 2013 shutdown, and (2) whether the government was legally unable to determine overtime pay during the 2013 shutdown for certain employees by their regularly scheduled paydays.  See ECF No. 153-1 at 19-21.  In its motion for summary judgment, defendant asks the court to determine: (1) whether the government violated the FLSA by not paying certain employees on their regularly scheduled paydays during the 2013 shutdown, (2) whether the government owes liquidated damages to certain employees for failing to pay regular wages in violation the FLSA, and (3) whether the government owes liquidated damages to certain employees for failing to pay overtime wages in violation of the FLSA.  See ECF No. 154 at 8-9.  For the reasons stated below, plaintiff's motion for partial summary judgment is granted and defendant's cross-motion for summary judgment is denied.

I.      Background

During the 2013 shutdown, the federal government "ceased certain non-essential operations and services" due to a lapse in appropriations.  See ECF No. 151 at 3.  The Anti-Deficiency Act ("ADA") prohibits the government from spending money when specific appropriations are not in place. See 31 U.S.C. § 1341(a)(1)(A) (2012) (stating that "[a]n officer or employee of the United States Government . . . may not . . . make or authorize an expenditure . . . exceeding an amount available in an appropriation or fund for the expenditure").  In such a scenario, however, employees who provide services involving "the safety of human life or the protection of property" are deemed "excepted" and are required to continue work despite the lack of funds.  31 U.S.C. § 1342 (2012); ECF No. 151 at 3.  Plaintiffs in this case were all excepted employees during the 2013 shutdown.  See ECF No. 46 at 2 (defining class of plaintiffs as excepted employees).

The conflict in this case arises from the intersection of these ADA provisions with the FLSA.  The FLSA governs minimum wage and overtime compensation.[1]  See 29 U.S.C. §§ 201-219.  Although the Act applied only to the private sector when Congress enacted it in 1938, Congress extended the Act to cover public employees in 1974.  See FLSA of 1974, Pub. L. No. 93-259, § 6, 88 Stat. 55.

The FLSA states, in part, that the government "shall pay to each of [its] employees" a minimum wage.  29 U.S.C. § 206(a).  See also 5 CFR § 551.301 (2016) (minimum wage regulation from the Office of Personnel Management). The FLSA also states that:

> no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  See also 5 C.F.R. § 551.501 (2016) (overtime regulation from the Office of Personnel Management).  Courts have held that employers are required to pay these wages on the employee's next regularly scheduled payday.  See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945); Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993).  The legislation applies to employees broadly, but contains specified exemptions, or specific categories of employees to whom the FLSA provisions do not apply.  See 29 U.S.C. § 213.  Plaintiffs in this litigation are all public employees who do not fall within any of the categories of employees exempted from the FLSA.  See ECF No. 46 at 2 (defining class of plaintiffs as non-exempt employees).

Plaintiffs, who were both excepted under the ADA and non-exempt under the FLSA, filed the instant litigation because defendant failed to pay the wages earned during the first week of the 2013 shutdown on the plaintiffs' regularly scheduled paydays.  See ECF No. 29-1 at 1-2; ECF No. 151 at 5.  Plaintiffs maintained their claims for FLSA violations while acknowledging that defendant retroactively paid employees after the 2013 shutdown ended.  See ECF 151 at 5.

The court certified this subset of affected employees as a class on October 16, 2014.  See ECF No. 46.  Specifically, the class is defined as:

---

[1] The court explained the background of the Fair Labor Standards Act at length in its opinion resolving defendant's motion to dismiss.  For brevity's sake, only the details necessary for thorough consideration of the motions currently before the court are repeated here.  See generally, ECF No. 38.

Federal employees (a) identified as of October 1, 2013 for purposes of the Fair Labor Standards Act ("FLSA") as employees, pursuant to 29 U.S.C. § 203(e)(2)(A); (b) classified as "non-exempt" under the FLSA as of October 1, 2013; (c) declared "Excepted Employees" during the October 2013 partial government shutdown; (d) worked at some time between October 1 and October 5, 2013, other than to assist with the orderly shutdown of their office; and (e) not paid on their regularly scheduled payday for that work between October 1 and October 5, 2013.

ECF No. 46 at 2. Plaintiffs purporting to meet this class definition include four of the plaintiffs who originally brought suit, and more than 24,000 others who consented to join the action. See ECF No. 137-1 (Second Am. Compl.); ECF No. 144-1 (Opt-In List). Going forward, references to plaintiffs or employees shall mean the excepted, non-exempt employees included within this class definition, unless otherwise specified.

Plaintiffs worked during the first week of the 2013 shutdown, specifically between October 1 and October 5, 2013, but were not paid for this work on their regularly scheduled paydays because the government understood the ADA to prohibit payment until funds were appropriated for that purpose. See ECF No. 151 at 3, 5. Plaintiffs take the position that despite prohibitions in the ADA, defendant was still obligated to pay employees pursuant to the FLSA. In defendant's view, "the shutdown placed two seemingly irreconcilable requirements upon Federal agencies: pay excepted employees on their next regularly scheduled payday, and make no such expenditures in the absence of appropriations for that purpose." ECF No. 154 at 15.

On the parties' motions for summary judgment, the court now evaluates defendant's obligations to plaintiffs.

II.   Legal Standard

The United States Court of Federal Claims has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). The parties do not dispute the court's jurisdiction to hear plaintiffs' claims, and the court is satisfied that it may do so.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1283 (Fed. Cir. 2008). A genuine dispute is one that "may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. "A fact is material if it 'might affect the outcome of the suit

under the governing law.'" Griffin & Griffin Exploration, LLC v. United States, 116 Fed. Cl. 163, 172 (2014) (quoting Anderson, 477 U.S. at 248).

The moving party carries the burden of establishing that summary judgment in its favor is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "Once that burden is met, the onus shifts to the non-movant to identify evidence demonstrating a dispute over a material fact that would allow a reasonable finder of fact to rule in its favor." Quapaw Tribe of Oklahoma v. United States, 120 Fed. Cl. 612, 615 (2015) (citing Anderson, 477 U.S. at 256).

In considering a motion for summary judgment, a court must draw all inferences in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). "With respect to cross-motions for summary judgment, each motion is evaluated on its own merits and reasonable inferences are resolved against the party whose motion is being considered." Marriott Int'l Resorts, L.P. v. United States, 586 F.3d 962, 968–69 (Fed. Cir. 2009).

III.   Discussion

   A.   The Anti-Deficiency Act Does Not Operate to Cancel Defendant's Obligations under the Fair Labor Standards Act

As an initial matter, defendant admits that it did not pay plaintiffs on their regularly scheduled pay days for work performed between October 1 and October 5, 2013. See ECF No. 151 at 3. It claims, however, that it should avoid liability under the FLSA for its failure to do so because it was barred from making such payments pursuant to the ADA. See ECF No. 154 at 14-15. Defendant neatly summarizes its view of the conflict as follows:

> The FLSA and the Anti-Deficiency Act appear to impose two conflicting obligations upon Federal agencies: the FLSA mandates that the agencies "shall pay to each of [its] employees" a minimum wage, 29 U.S.C. § 206(a) (emphasis added), which has been interpreted by the courts to include a requirement that the minimum wage be paid on the employees' next regularly scheduled pay day, see Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707 n.20 (1945); Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir.1993), and the Anti-Deficiency Act mandates that "[a]n officer or employee of the United States Government . . . may not . . . make or authorize an expenditure . . . exceeding an amount available in an appropriation or fund for the expenditure . . . ." 31 U.S.C. § 1341(a)(1)(A) (emphasis added). Thus, when Federal agencies are faced with a lapse in appropriations and cannot pay excepted employees on their next regularly schedule payday, the question arises of which statutory mandate controls.

Id. at 15-16.

While the court understands why defendant frames the problem in this way, the court believes the issue is more complex than simply a choice between whether the FLSA or the ADA controls.  As the court observed in its previous ruling, the Supreme Court has held that the ADA's requirements "apply to the official, but they do not affect the rights in this court of the citizen honestly contracting with the [g]overnment." Salazar v. Ramah Navajo Chapter, 132 S. Ct. 2181, 2193 (2012) (quoting Dougherty v. United States, 18 Ct. Cl. 496, 503 (1882)).  In addition, the Court of Claims has stated that "[a]n appropriation per se merely imposes limitations upon the Government's own agents; . . . but its insufficiency does not pay the Government's debts, nor cancel its obligations, nor defeat the rights of other parties."  Ferris v. United States, 27 Ct. Cl. 542, 546 (1892).

Plaintiffs cite to a number of cases that are in accord with the holdings in Salazar and Ferris.  See New York Airways, Inc. v. United States, 177 Ct. Cl. 800, 810 (1966) (stating that "the mere failure of Congress to appropriate funds, without further words modifying or repealing, expressly or by clear implication, the substantive law, does not in and of itself defeat a Government obligation created by statute . . .  The failure to appropriate funds to meet statutory obligations prevents the accounting officers of the Government from making disbursements, but such rights are enforceable in the Court of Claims"); Lovett v. United States, 104 Ct. Cl. 557, 582 (1945) (explaining that "[i]n a long line of cases it has been held that lapse of appropriation, failure of appropriation, exhaustion of appropriation, do not of themselves preclude recovery for compensation otherwise due").  See also Ford Motor Co. v. United States, 378 F.3d 1314, 1320 (Fed. Cir. 2004) ("[T]he Anti-Deficiency Act does not bar recovery" of costs arising from performance of a contract"); Wetsel-Oviatt Lumber Co. v. United States, 38 Fed. Cl. 563, 570 (Fed. Cl. 1997) (stating that "neither the Appropriations Clause of the Constitution, nor the Anti-Deficiency Act, shield the government from liability where the government has lawfully entered into a contract with another party").

Defendant's counter-argument to this line of cases relies on the premise that the judicially established requirement of prompt payment, see Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707 (1945), Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993), does not operate in the present circumstances, when the FLSA and the ADA are apparently in conflict.  It argues that, instead, the court should look only to the bare statutory language in resolving question of its liability.  See ECF Nos. 154 at 15-20, 156 at 9 (arguing that "[r]econciliation of this apparent conflict requires the Court to give effect to express language over implied rules").

After careful consideration of defendant's arguments in support of its motion for summary judgment, the court remains unpersuaded that it can entirely avoid liability based only on the superficial conflict between these statutes.  The statutes at issue can be harmonized in a manner that neither party fully explains.

As the court held in its previous opinion, the first two counts of plaintiffs' complaint state legally sufficient claims for relief against defendant for its alleged violation of the Fair Labor Standards Act.  See ECF No. 38 at 13.  This legal conclusion does not ignore the ADA, as defendant's reasoning suggests.  In addition to the sections of the FLSA that mandate the payment of certain wages, see 29 U.S.C.§§ 206-207, the statute also includes both a section on recoverable damages and a section establishing circumstances in which the employer can avoid liability for damages beyond the amount of wages earned.  Section 216 states, in relevant part, that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (2012).

The employer, however, may be relieved of liability for the liquidated damages if it can demonstrate: "to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."  29 U.S.C. § 260 (2012).  In such circumstances, "the court may, in its sound discretion, award no liquidated damages or award any amount thereof."  See id.

Considering this more complete view of the FLSA, it is the court's opinion that the appropriate way to reconcile the two statutes is not to cancel defendant's obligation to pay its employees in accordance with the manner in which the FLSA is commonly applied.  Rather, the court would require that defendant demonstrate a good faith belief, based on reasonable grounds, that its actions were appropriate.  As such, the court will proceed to analyze this case under the construct of the FLSA, and evaluate the existence and operation of the ADA as part of determining whether defendant met the statutory requirements to avoid liability for liquidated damages.

B.     Defendant's Failure to Timely Pay Plaintiffs Violated the FLSA

As noted above, the FLSA states, in part, that the government "shall pay to each of [its] employees" a minimum wage.  29 U.S.C. § 206(a).  The FLSA also requires that the government pay overtime wages to its employees for time worked in excess of forty hours per week "at a rate not less than one and one-half the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).

As this court noted in evaluating the legal sufficiency of plaintiffs' claims, courts have held that employers are required to pay these wages on the employee's next regularly scheduled payday.  See ECF No. 38 at 12 (citing, inter alia, Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945); Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993)).  See also 29 C.F.R. § 778.106 (2016) (stating the general rule "that overtime compensation earned in a particular workweek must be paid on the regular pay day for

the period in which such workweek ends"). Because plaintiffs alleged that defendant failed to pay wages in accordance with this rule, their claims survived defendant's motion to dismiss. See ECF No. 38 at 13.

Prior to filing the instant motions, the parties filed a document entitled Stipulation of Facts Not in Dispute. See ECF No. 151 at 3. Paragraph 7 reads as follows: "The Government did not pay employees who were designated as 'non-exempt' under the FLSA and as 'excepted' for purposes of the 2013 Government shutdown for work performed between October 1 and October 5, 2013, on their regularly scheduled paydays for that work." Id. at 5. The parties also agree that the plaintiffs were retroactively paid their earned wages. See id. But, eventual payment is not what the FLSA requires.

Thus, under the legal framework previously established by the court, together with the undisputed and material facts agreed to by the parties, defendant's failure to timely pay plaintiffs' wages is a violation of the FLSA.

C.    Defendant is Liable for Liquidated Damages

Because the court has concluded that defendant violated the FLSA, it is liable for liquidated damages. Section 216 states, in relevant part, that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The defendant argues it should be relieved of this liability, or a portion thereof, in one of two ways.

First, defendant claims it can demonstrate that it acted "in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. In such circumstances, "the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." See id.

Second, the government argues that it should avoid liability for liquidated damages resulting from the late payment of overtime wages based on an interpretive bulletin issued by the Department of Labor ("DOL") affording employers some leniency in this regard "[w]hen the correct amount of overtime compensation cannot be determined until some time after the regular pay period." 29 C.F.R. § 778.106.

For the following reasons, the court finds neither argument persuasive.

      1.    Defendant has not demonstrated good faith and reasonable grounds for believing its failure to pay did not violate the FLSA

The employer bears the burden of establishing good faith and reasonable grounds for its actions.  See Adams v. United States, 350 F.3d 1216, 1226 (Fed. Cir. 2003).  The burden is a substantial one, consisting of both a subjective good faith showing and an objective demonstration of reasonable grounds.  Bull v. United States, 68 Fed. Cl. 212, 229 (2005), clarified by 68 Fed. Cl. 276, aff'd, 479 F.3d 1365 (Fed. Cir. 2007) (citations omitted).  "If . . . the employer does not show to the satisfaction of the court that he has met the two conditions mentioned above, the court is given no discretion by the statute, and it continues to be the duty of the court to award liquidated damages."  29 C.F.R. § 790.22(b).

The initial good faith inquiry is subjective in nature and requires an employer to demonstrate "an honest intention to ascertain what the [FLSA] requires and to act in accordance with it."  Bull, 68 Fed. Cl. at 229 (quoting Beebe v. United States, 640 F.2d 1283, 1295 (1981)).  Here, the government argues that it believed, in good faith, that the ADA precluded timely payment of wages to plaintiffs because, in the absence of appropriations, there was no avenue for federal agencies to comply with the FLSA.  See ECF No. 154 at 21. The government adds that it was precluded from complying with the FLSA, because "[i]t is a federal crime, punishable by fine and imprisonment, for any Government officer or employee to knowingly spend money in excess of that appropriated by Congress."  Id. at 22 (quoting Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 430 (1990)).  It also notes that an officer of the government who "knowingly and willfully [violates] section 1341(a) or 1342 of [the ADA] shall be fined not more than $5,000, imprisoned for not more than 2 years, or both."  Id. (quoting 31 U.S.C. § 1350).

The government's effort to establish good faith, however, elides the requirement that it "take active steps to ascertain the dictates of the FLSA and then act to comply with them."  Angelo v. United States, 57 Fed. Cl. 100, 105 (2003) (quoting Herman v. RSR Sec. Services, 172 F.3d 132, 142 (2d Cir. 1999)).  In Angelo v. United States, the court considered claims for overtime wages brought by federal employees.  57 Fed. Cl. at 101.  In support of its good faith defense in that case, the government argued that the official, who erroneously had classified employees as exempt from overtime compensation, conducted a cursory review of the employees' job descriptions and applicable regulations.  Id. at 106.  The official admitted in her deposition, however, that she had not considered, or even inquired, about the specific requirements for an exemption.  Id.  The court concluded "that [the official's] admittedly limited inquiry [did] not . . . meet the good faith test."  Id. at 107.

Defendant attempts to distinguish this case from Angelo, which it characterizes as a "typical" FLSA case in which adherence to the law "is within the employer's control."

ECF No. 154 at 21.  Here, defendant argues, "no course of compliance was available to Federal agencies; it was impossible for Federal agency officials to comply with both the FLSA and Anti-Deficiency Act during the shutdown." Id.  On this basis, the government asks the court to find that it acted in good faith by honoring the ADA's express prohibition against making payments in the absence of an appropriation.  Id. at 26.

Contrary to the government's suggestion, its burden under the FLSA is not met so easily.  In Angelo, this court was not satisfied that good faith was established by even the limited inquiry conducted by the government into whether its actions were compliant. See 57 Fed. Cl. at 107.  Here, defendant made no inquiry into how to comply with the FLSA, instead relying entirely on of the primacy of the ADA.  By its own admission, the government did not consider—either prior to or during the government shutdown—whether requiring essential, non-exempt employees to work during the government shutdown without timely payment of wages would constitute a violation of the FLSA. See ECF No. 151 at 4.  Defendant further admits that it did not seek a legal opinion regarding how to meet the obligations of both the ADA and FLSA during the government shutdown, see id., an action it now claims would have been futile, see ECF No. 154 at 22.

Defendant's argument, essentially, asks the court to modify the standard for establishing good faith from a requirement that the employer demonstrate "an honest intention to ascertain" its legal obligations, to the much less stringent requirement that the employer demonstrate merely an honest belief that it could not comply with the requirements of the law.  The defendant's proposed inquiry contravenes the spirit of the FLSA by effectively reading out the requirement that an employer taking any action at all to determine its legal obligations.  The court declines to adopt defendant's test for establishing good faith.  Because the government admittedly took no steps to determine its obligations under the FLSA during the 2013 shutdown, no disputed and material facts exist, and the court cannot find that it acted in good faith.

Defendant claims that it had reasonable grounds for believing that the ADA precluded its compliance with the FLSA during the 2013 shutdown because this is an issue of first impression.  See ECF No. 154 at 29.  The court doubts the viability of such an argument, but will not indulge in a lengthy discussion of it in this case.  The exception to liability for liquidated damages is a two-part test.  Because defendant has failed to establish the first requirement of subjective good faith, the court need not determine whether it had objectively reasonable grounds for its inaction.

As such, the exception that would permit the court to award a reduced amount of liquidated damages, or no liquidated damages at all, does not apply.[2]

---

[2] The court appreciates that the parties diligently presented evidence of factors that may have affected a discretionary award of liquidated damages, such as actions and communications surrounding passage of the Pay Our Military Act, guidance documents

2.    Defendant has not satisfied the conditions under which late payment of overtime wages is permissible

Despite the general rule "that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends," the DOL has afforded employers some leniency from the Act's liquidated damages requirement with regard to overtime wages "[w]hen the correct amount of overtime compensation cannot be determined until some time after the regular pay period." 29 C.F.R. § 778.106. This provision is an interpretive bulletin from the DOL, and as such, does not rise to the authoritative level of a regulation, but courts have regarded it as "a reasonable construction of the FLSA." Brooks v. Vill. of Ridgefield Park, 185 F.3d 130, 135-36 (3rd Cir. 1999).

Defendant argues that it should be excused from liability for liquidated damages as to overtime wages because "an event wholly beyond the control of Federal agencies," namely the 2013 shutdown, prevented it from complying with the FLSA timely payment rules. ECF No. 154 at 31. Before examining the substance of this claim, the court notes that this assertion rings hollow given certain of defendant's responses in discovery.

By way of interrogatory no. 14, plaintiffs asked defendant to:

Identify each agency of the Government that could not determine, compute, or arrange for the payment of overtime compensation during the October 2013 partial shutdown because personnel involved in the process of determining, computing or arranging for the payment of overtime compensation were not classified as excepted employees and therefore were on furlough.

ECF 153-16 at 3. In response, the government identified the Broadcasting Board of Governors ("BBG"), the National Aeronautics and Space Administration ("NASA"), and the Peace Corps. Id at 5. These three agencies employed only thirty-eight of the more than 24,000 plaintiffs in this case. The BBG employed twenty-nine, NASA employed three, and the Peace Corps employed six. See ECF No. 153-2 at 3. By defendant's own admission, the agencies employing the vast majority of class members had staff in place during the 2013 shutdown who were capable of calculating overtime wages due to their employees. Thus, the DOL bulletin's exception clearly does not apply to those many agencies.

---

issued by the United States Office of Personnel Management relating to suggestions for mitigating hardships during furloughs, and the specific injuries suffered by plaintiffs in this case. Because the court has determined that it does not have discretion in the award or amount of liquidated damages, an extended discussion of this evidence is unnecessary.

The only remaining issue, then, is to determine whether defendant can avoid liability as to the thirty-eight individuals employed by the BBG, NSA, and the Peace Corps.  As noted above, defendant argues that because the 2013 shutdown was "an event wholly beyond [its] control," it should have triggered the DOL bulletin's exception.  See Dominici v. Bd. of Educ. of City of Chicago, 881 F. Supp. 315, 320 (N.D. Ill. 1995).  This notion most comfortably fits with circumstances that involve a natural disaster, and cannot be used as an excuse for circumstances within the employer's control.  See id. ("Although this Court agrees that natural disasters or similar events wholly beyond the control of the employer may in proper circumstances allow an employer to make late payments without violating the FLSA, . . . [a]n employer may not set up an inefficient accounting procedure and then claim it is not responsible for timely payment of wages due to its own incompetence.").

Defendant argues that the agencies' failure to timely pay overtime wages resulted from circumstances beyond the control of those agencies, inviting a distinction for purposes of liability in this case between the executive and legislative branches of the government.  See ECF No. 154 at 30.  The court declines to make such a distinction, and finds that application of the general rule requiring timely payment of overtime wages is appropriate in this case for two reasons.  First, this argument is, essentially, another way of saying that defendant was unable to meet its obligations under the FLSA because of the ADA.  The court has already found that the ADA does not excuse defendant's FLSA violations, and to allow defendant to avoid liability under this exception would amount to an end run around that legal conclusion.

In addition, although neither the parties nor the court found a case involving the precise circumstances and context as the matter at bar, the Ninth Circuit's decision in Biggs v. Wilson is again instructive.  1 F.3d 1537 (9th Cir. 1993).  The dispute in Biggs involved the California Department of Transportation's failure to timely pay overtime wages to certain employees during the 1990 state budget impasse.  See id. at 1538.  The Ninth Circuit upheld the district court's conclusion that a fifteen-day delay in payment of overtime wages violated the FLSA.  See id. at 1544.  In reaching this conclusion, the Ninth Circuit cites the DOL bulletin, 29 U.S.C. § 778.106.  See id. at 1543.  Although the court did not discuss the specific portion of the bulletin that provides for an exception to timely payment, the court did look to the section as an authority for determining when payment is considered timely.  See id.  As such, this court considers it a fair inference that the Ninth Circuit was aware of the stated exception, and finds it notable that the court did not apply it in the circumstance of a budget impasse.  While this inference does not alone provide the basis of this court's decision, it certainly undercuts defendant's position that an agency should be permitted to wield this exception to timely payment in the event of a budget impasse, like the one that resulted in the 2013 shutdown.

Accordingly, the court holds that the DOL bulletin's exception is unavailable in this case.

12

D.      Calculation of Liquidated Damages

Because defendant has failed to establish the requirements for either exception to liability for liquidated damages, "it continues to be the duty of the court" to make an award.  29 C.F.R. § 790.22(b).  In accordance with 29 U.S.C. § 216(b), the court finds that plaintiffs are entitled to liquidated damages in an amount equal to the minimum and overtime wages that defendant failed to timely pay.

Consistent with the conclusions in this opinion, plaintiffs shall calculate the amount due from the defendant, delineated either by individual class member or by relevant categories of class members.  On or before **March 17, 2017**, plaintiffs shall submit a draft of those calculations to defendant.  On or before **March 31, 2017**, the parties shall confer and discuss any disagreements as to the calculations.  Following this conference, on or before **April 7, 2017**, the parties shall jointly file a statement with the court reporting the results of both the conference and the calculations so that the court may proceed to entering a judgment in this case.

IV.    Conclusion

Plaintiffs' motion for partial summary judgment, <u>see</u> ECF No. 153, is **GRANTED**.  Defendant's cross-motion for summary judgment, <u>see</u> ECF No. 154, is **DENIED**.

As indicated above, on or before **March 17, 2017**, plaintiffs shall submit a draft of their damages calculations to defendant.  On or before **March 31, 2017**, the parties shall confer and discuss any disagreements as to the calculations.  And, on or before **April 7, 2017**, the parties shall jointly file a statement with the court reporting the results of both the conference and the calculations.

IT IS SO ORDERED.

s/ Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Chief Judge